CHARLES E. LAWTON, Petitioner and Appellee, *v.* VICENTE RODRÍGUEZ-RIVERA, Respondent and Appellant.

No. 3672. Argued November 20, 1925.—Decided May 21, 1926.

*Charles Hartzell* and *Daniel F. Kelly* for the appellant. *Francisco Sóto Grus* for the appellee.

Mr. Justice Franco Soto delivered the opinion of the court.

Rafael Carrión Pacheco, grantor of the parties to this proceeding and owner of three parcels of land situated at the place called "Machuchal" of the northern section of the ward of Santurce of this city, grouped the parcels and formed a single property which he recorded under an independent number in the registry of property. The property so formed was converted by him into an urban property under a general plan dividing it into twelve lots, or six on each side of a street opened through the property to give access thereto, with a pillar at each entrance on which the name "Carrión's Court" was engraved. The lots are numbered from 1 to 12 and the area and boundaries of each are given.

Under this plan of urbanization whose purpose appeared to be only to interest the public in the purchase of the lots,

Carrión sold on January 18, 1922, to George H. Joy lot No. 4 of the plan measuring on the front 28.59 meters, the following restrictions being made a part of the contract:

"C.—That the purchaser, his heirs and successors, bind themselves that in case they should decide to build on the lot they will construct only one house, which shall be at a distance of twenty-five feet from the front of the street which is on the east side, and likewise they bind themselves not to build fences on the boundary lines of the property at a distance of less than twenty-five meters from the street line."

After this sale, on February 13, 1922, Carrión sold to Charles E. Lawton, the petitioner herein, lot No. 3. The deed mentions the grouping and plan of urbanization, contains the same restrictions as those contained in the deed of sale of lot No. 4, and stipulates as follows:

"THIRD.—That the said grouping of the parcel of land described, which is still pending record, was made according to a plan prepared for that purpose by José Castro Martínez, a licensed surveyor, the said land being divided into lots numbered from 1 to 12 inclusive, with a street eight meters wide running through it from north to south, the twelve lots fronting on the street.

      *      *      *      *      *      *      *

"THIRD.—It is a condition of this sale that on the lot the purchaser or his successor shall not construct more than one dwelling-house and that at a distance of twenty-five feet from the front line of the street opened through the said land, for it is the purpose of the seller that all houses built on said land shall be at the same distance from the street abutted by the other lots of the seller."

Both conveyances were recorded in the registry of property, the conditions relative to such restrictions appearing from the respective entries.

George H. Joy divided his lot No. 4 and sold to Arturo L. Carrión a parcel of 8.59 meters which the purchaser joined to his lot No. 5, building thereon a house which practically straddled the dividing line between lots Nos. 4 and 5 of the original plan.

The other part of lot No. 4, which was reduced to 20

meters on its front, was sold by Joy to Vicente Rodríguez Rivera, who began to build a house on the said fraction, thereby giving rise to this injunction proceeding in which Lawton, the owner of adjoining lot No. 3, alleges that its building violated the restrictive condition limiting the construction on lot 4 to only one house.

The most important contention of the appellant against the judgment sustaining the complaint is that the restriction is of a personal nature between the vendor and the vendee which does not bind future purchasers among themselves, and that such a restriction is not the servitude recognized by the Civil Code for which there must always be a dominant and a servient tenement.

In our opinion, in adopting the old Civil Code in the matter of servitudes without introducing any change or innovation therein the Legislature was not actuated by the fact that it could not foresee the new method represented by the restrictions whose character is discussed and which exigencies or more modern improvements seem to impose by reason of sanitary requirements and for embellishment or beautifying purposes, but because the meaning of the positive and negative servitudes defined by the Code is so broad that when such restrictions are analyzed they do not seem to be different in their nature from the negative servitudes defined by the Code in its section 540, as follows:

"Servitudes are also positive or negative.

"A positive servitude is one which imposes upon the owner of the servient tenement the obligation of allowing something to be done or of doing it himself, and a negative servitude is one which prohibits the owner of the servient tenement doing something which would be licit for him to do if the servitude did not exist."

Within legal technicality, if the servitude consists in allowing something to be done by the owner of the servient tenement (positive servitude), or in forbidding him to do something which would be licit if the servitude did not exist (negative servitude), it would seem logical that the restric-

tions that bind reciprocally each owner of a lot to build only one house on each lot, partake essentially, because of the prohibition of a specific use of the property of another, of those servitudes that consist in not to construct a higher building, *servitus altius non tollendi*, which, coming from the Roman law, had been well known up to the present. But without its being necessary to determine more precisely the legal aspect whose validity is in controversy, it is important to say that as something that limits the right to use real property is involved, such restriction between the contracting parties must be covenanted expressly, for otherwise the presumption is in favor of the free use of the property, and in order for it to be effective against a third person it is indispensable also that it be recorded in the registry of property. These are two propositions to be examined in the circumstances of this case.

The preliminary acts of Rafael Carrión y Pacheco in grouping the properties recorded in the registry under an independent number and in making a general plan of the land showing its division into lots with their respective areas and numbered from 1 to 12 fronting on a street opened through the property leaving six lots on each side with a pillar at each entrance to the street bearing the name "Carrion's Court," are an evidence and clear demonstration of a general plan of improvements for the exclusive and private use of future purchasers. And the intention of Rafael Carrión was specifically confirmed and made manifest when he sold lot No. 3 to the petitioner and referred in the deed to the plan prepared and substantially to the preliminary acts which we have described and imposed on the purchaser, among other restrictions, that of building only one house on said lot No. 3. Under these circumstances the appellee properly argues as follows:

"It having been laid down that we are concerned with a definite plan of improvements and with mutual conveyances to the pe-

titioner and to the respondent by the common grantor, Carrión, in which conveyances the same restriction was imposed that only one dwelling-house should be built on the lots acquired by the petitioner and by Joy, it only remains to be seen whether the condition has been violated.

"When the restrictive condition was recorded in the registry it affected lot No. 4 in such a way that the successive grants and even its changes would always be subject to that condition. And this is so even in case it should not have been stipulated that the condition was to affect the successors, heirs or grantees of the purchasers. And we say that if only one house could be built on lot No. 4, more than one house could not exist on any part of lot No. 4. And it is clear that on the parcel of 8.59 meters there is a building that will be or is used as a place of residence, although that place of residence does not of itself constitute a house and is completed with the rest of the structure extending to lots 5 and 6, albeit it could have been a house entirely on the parcel of 8 meters. The essential thing is that a single neighbor, only one family, should dwell in only one building constructed on lot No. 4, according to the condition, and now, if the construction started by the respondent were allowed, there would be two families, two dwelling-houses, on lot No. 4."

▆ On the other hand, the clause that seems to be explanatory and appears in the deed of conveyance from Joy to the appellant and undoubtedly agreed upon as a safeguard of any contingency that might result by reason of the subdivision by Joy of lot No. 4, the other part having been sold to Arturo Carrión, rather gives more force to the restriction imposed upon future purchasers among themselves, or their successors or grantees. The clause to which we refer is as follows:

"SIXTH.—Carrión being present, he states that even though in Joy's title a limitation to build only one dwelling-house on that lot was imposed, that limitation in no way shall affect the right of purchaser Rodríguez Rivera to build a dwelling-house, inasmuch as the previous segregation made of that lot by the conveyance to Arturo Carrión was destined to complete an adjoining lot of said Arturo Carrión."

It may be concluded therefore that the intention of Rafael Carrión could not have been to relieve Joy from the restric-

tion imposed on him, nor could he have done so. For that it was necessary to secure the consent of Lawton, who had purchased his lot before the acquisition by Joy, induced no doubt by the circumstances of the general plan of improvements and as a consequence of which he was charged with and agreed to accept the same restriction which was complied with of building only one dwelling-house on his lot No. 3. If, as contended by the appellant, the limitations were for the sole benefit of Rafael Carrión Pacheco, the originator of the general plan of improvements, why did he not set aside the limitation instead of merely expressing an opinion interpreting the effect of the restrictive clause, believing on the contrary that the restriction was not being violated because the segregation from lot No. 4 (8.59 meters) in favor of Arturo Carrión was to complete lot No. 5? From his intervention it could not be deduced, if such were his object, that he wanted to inform the appellant of the existence of limitations which were the result of a plan of improvements that had been prepared beforehand for residential purposes and that the mere subdivision of a lot, in relation to the limitation, was no ground to consider it infringed, but leaving aside this point, which is not the object of discussion, if as occurred later Arturo Carrión built on the portion of lot No. 4 first segregated although by extending the building from lot No. 5, it must be concluded *a fortiori* that the subsequent purchase by the appellant of the rest of lot No. 4, intending to build another house on it, constitutes a violation of the appellee's right.

Although the appellant cites different cases which determine the value of restrictive clauses of a similar character and their effect among future purchasers, the tendency observed by those authorities and by others cited in opposition thereto by the appellee is to give them legal effect among the said purchasers and their heirs or grantees whenever they are reasonable and, when they follow a general plan

of improvements, are stated expressly in the title and are recorded in the registry of property. The case of *Glines* v. *Matta*, 19 P.R.R. 388, is the expression of that rule in this jurisdiction and that case decided the questions raised in the present case, among them, that alleged by the appellant that there is no equity in the petitioner's prayer for a judgment granting the injunction. It suffices to refer to pages 415-16 of the case cited where a broad discussion on that point may be seen.

It is insisted, however, and assigned as error that the *Glines Case, supra,* has no application because there is a difference in the facts and because it proceeded from a corporation which adopted a general agreement establishing certain limitations on the property, which was reduced to the form of a deed and recorded in the registry, giving notice to all purchasers that the lots were sold subject to the said restrictions. As a consequence thereof it is alleged that it was a general restriction recorded in the registry of property, which does not appear in this case where the grouping of the parcels of land for division into lots did not contain any restrictions.

One of the restrictions in that case was the obligation of each owner of a lot to leave a part of the land free from buildings, that being the matter in controversy, and we see no reason for making distinctions in that feature of the case. On the other hand, a corporation being an artificial creature of the law, all of its acts must be performed in its corporate name through its board of directors. These do not act as natural persons or as agents one of the other. They proceed by resolutions and to act as a corporate body they have to meet together in compliance with the requisites as determined by its articles of incorporation and by-laws. Hence the natural reason for adopting a general resolution on a matter such as the one involved and recording it in the registry

instead of adopting a resolution in each particular case. But it is likewise logical that Rafael Carrión Pacheco, as a natural person and with full capacity to contract, should develop his activities by successive acts, without any difficulty or requisite to comply with, and to act upon his own accord establishing in each sale the restrictions that were to control the erections to be made, which were thus made expressly at least when he sold lots Nos. 3 and 4. There is no ground for the distinction.

In regard to the costs, we shall not interfere. From the registry the appellant had sufficient notice of the restriction imposed on lot No. 4. From it appeared also the mutual obligation imposed upon the appellee and complied with by him. If, as appears from the oral evidence, he was given notice by the petitioner before beginning the construction of the building that he could not do so and in spite of that fact he started to build, his temerity is manifest.

For the foregoing reasons the judgment appealed from must be affirmed.

#### ON RECONSIDERATION.

Mr. Justice Franco Soto delivered the opinion of the court.

The appellant moves for reconsideration of the judgment of May 21, 1926, for the following reasons: That it was said in the opinion of this court that the restrictions contained in the deeds from Rafael Carrión to Joy and to Lawton were the same, when in fact they were not, nor were they uniform for all of the lots; that the appellant is made to contend that the restrictions on building are not those recognized by the Civil Code, when it seems that the brief was not understood, explaining that what he really said was that for such restrictions to have the extent of a servitude in Porto Rico they must be imposed under all of the requirements of the Civil Code and the Mortgage Law; that in discussing the case of *Glines* v. *Matta,* 19 P.R.R. 388, this court seems to have given great importance to the appellant's argument

referring to the resolution adopted in that case by the board of directors of the corporation without giving proper consideration to his main contention that in the *Glines Case* there were requisites which are entirely absent in the case at bar, among them being that in the record of the main property a public deed was recorded containing uniform restrictions imposed upon all of the lots to be segregated from the main property; that in regard to the third assignment of error discussed in the appellant's brief that there is no equity in the petitioner's prayer for an injunction, this court said only that the question was decided in the *Glines Case,* appearing to understand that the appellant contended that an injunction did not lie to prevent the violation of a servitude, when his contention was that it lies, as a purely legal question, whenever a clear right is violated, but that as this was a proceeding in equity, the court could take into account that the petitioner would suffer no actual damage if the injunction were not issued, and finally that he should not have been adjudged to pay the costs.

In our opinion of May 21, 1926, we copied the pertinent clauses on restrictions contained in the deeds from Carrión to Joy and from Carrión to Lawton. The restriction requiring the construction of only one house on each lot is identical in its literal meaning in both deeds, and they were recorded in the registry of property. To those restrictions we have referred and that was the only object of this suit. The fact that in the deed to Joy the restrictions regarding fences were left without effect and that no reference to this was made in the deed to Lawton, shows that it was the intention of the parties to give complete uniformity to the only and essential restriction that remained in force.

The present contention of the appellant that the Civil Code recognizes as servitudes the restrictions that control the erection of buildings, gives more force to the view expressed

in our former opinion. To show that we did not misunderstand the appellant we will copy the following paragraph from his brief:

"The only encumbrances or restrictions on a tenement in favor of another which are recognized in our civil law are included in sections 586–611 of our Civil Code. None of these sections refers to any servitude of the nature sought to be enforced in the present case. Such being the case, we understand that the alleged restriction must be interpreted strictly against the person who seeks to enforce it and that therefore the case of Glines v. Matta must likewise be interpreted strictly, applying it only to other cases wherein all the necessary requisites concur in order that there be no doubt of the existence of the servitude, for otherwise the application of said case liberally would result in a radical modification of the civil law in the matter of servitudes which would cause serious inconveniences in real estate transactions and even in territorial credit, and we sustain that it is against the letter, the spirit and the theory of our laws, both of the civil and mortgage laws which are based on the freedom of contract in the absence of express prohibitions."

In this part of the appellant's motion it is alleged also that in order to reach the conclusion that the restriction imposed by Rafael Carrión on the lot sold to Joy constitutes a servitude in favor of Lawton's lot we took into consideration the dates of the deeds from Carrión to Joy and from Carrión to Lawton and the fact that they were recorded in the registry of property, without taking into account that the deed to Joy, although prior in date to that to Lawton, was recorded more than two months later.

As what prejudices the appellant is his knowledge of the restriction imposed, according to the evidence in this case, the fact that the deed from Carrión to Joy was recorded after that to Lawton was recorded means nothing in regard to the appellant. At any rate Joy recorded his deed on April 27, 1922, and the appellant bought from him on April 2, 1924, the registry giving him notice of the servitude from the former date. Besides, in the contract of purchase by the appellant from Joy, in which Rafael Carrión intervened

by expressing an opinion without venturing to cancel the servitude, a point which was sufficiently discussed in our first opinion, the said appellant likewise had knowledge of the restriction imposed on the lot that he was buying.

To distinguish this case from the *Glines Case* it was not an essential point to consider in this case that the restriction was recorded with the record corresponding to the main property. This was likewise considered in the opinion in referring to the said case. By the way a corporation has to act it was explained that in that case a general resolution was adopted as to the restrictions that controlled the erection of buildings on the lots and that it was recorded with the record corresponding to the main property. Here the restriction was established when Carrión sold lots Nos. 3 and 4 and not only were they recorded in the registry, but in the records made of both Lawton's and Joy's deeds at the beginning of the description of the lots the registry refers them to the plan of improvements of the main property by making an express mention.

In the third assignment of error the appellant contended that there was no equity in the prayer of the petitioner for an injunction. It is now alleged that this court seems to have understood that the appellant argued that the injunction did not lie to prevent the violation of a servitude, when in fact his contention was that although it lay, the court could take into account that the petitioner would suffer no damage if the injunction were not issued. On this point the pertinent paragraph of our opinion may be seen and nothing in it seems to support the appellant's conclusion. The paragraph reads as follows:

"Although the appellant cites different cases which determine the value of restrictive clauses of a similar character and their effect among future purchasers, the tendency observed by those authorities and by others cited in opposition thereto by the appellee is to give them legal effect among the said purchasers and their heirs or grantees whenever they are reasonable and, when they follow a general

plan of improvements, are stated expressly in the title and are recorded in the registry of property. The case of *Glines* v. *Matla,* 19 P.R.R. 388, is the expression of that rule in this jurisdiction and that case decided the questions raised in the present case, among them, that alleged by the appellant that there is no equity in the petitioner's prayer for a judgment granting the injunction. It suffices to refer to pages 415–16 of the case cited where a broad discussion on that point may be seen."

The contention of the appellant in his brief was that the question involved is purely a question of equity, inasmuch as the complaint prays for an equitable remedy, an injunction, and claims as applicable the legal doctrine that a judgment that prejudices materially one party without benefiting the other in the same proportion should not be rendered, and that the doctrine of comparative injury must therefore be considered.

In regard to the theory of injury this court, in the said *Glines Case, supra,* page 388, cited the following, with approval, from Pomeroy's Equity Jurisprudence:

"Section 1342. *Restrictive Covenants Creating Equitable Easements.*—This doctrine has already been examined, and it has been shown that restrictive covenants in deeds, leases, and agreements limiting the use of land in a specified manner, or prescribing a particular use, which create equitable servitudes on the land, will be specifically enforced in equity by means of an injunction, not only between the immediate parties, but also against subsequent purchasers with notice, even when the covenants are not of the kind which technically run with the land. The injunction in this class of cases is granted almost as a matter of course upon a breach of the covenant. The amount of damages, and even the fact that the plaintiff has sustained any pecuniary damages, are wholly immaterial. In the words of one of the ablest of modern equity judges: 'It is clearly established by authority that there is sufficient to justify the court interfering if there has been a breach of the covenant. It is not for the court, but the plaintiffs, to estimate the amount of damages that arises from the injury inflicted upon them. The moment the court finds that there has been a breach of the covenant, that is an injury, and the court has no right to measure it, and no right to refuse to the plaintiff the specific performance of his con-

tract, although his remedy is that which I have described,' namely, an injunction.''

The injury, therefore, is not an element that must necessarily be compared and weighed in the case. It has been held in harmony with our Injunctions Act and the doctrine laid down in the *Glines Case* that the mere fact that a contract is violated is sufficient ground for the intervention of the courts by injunction; the purchaser has a right to use and enjoy the property in the manner and form stipulated and it is no answer to say that the act of which a plaintiff complains does not cause him any injury or will not result in any benefit to him.

''The rule upon this subject, generally adopted and followed by the courts of this country, is, we think, correctly stated in Kerr on Injunctions, 2d ed. p. 356: 'If the right at law under the covenant is clearly established, and the breach is clear, and the covenant is of such a nature that it can, consistently with the rules and principles of the court, be specifically enforced, the court will not, unless under very exceptional circumstances, take into consideration at the hearing the comparative injury to the parties from granting or withholding the injunction. . . . The mere fact that there has been a breach of covenant is a sufficient ground for the interference of the court by injunction. A covenantee has the right to have the actual enjoyment of property *modo et forma* as stipulated for by him. It is no answer to say that the act complained of will inflict no injury on the plaintiff, or will be even beneficial to him. It is for the plaintiff to judge whether the agreement shall be preserved as far as he is concerned, or whether he shall permit it to be violated. It is not necessary that he should show that any damage has been done. It being established that the acts of the defendant are a violation of the contract entered into by him, the court will protect the plaintiff in the enjoyment of the right which he has purclased.' '' 28 L.R.A. (N. S.) 721–22.

In regard to the costs the appellant's reasoning is not so convincing or persuasive as to move us to a further consideration of that point.

We will not conclude without explaining that even though in the first paragraph of our opinion of May 21, 1926, we

said that Lawton's purchase was prior to that of Joy, we meant to refer to the acquisition by the appellant from Joy and our conclusion should have been understood in that sense, our opinion being explained on that point if necessary.

For the foregoing reasons the motion for reconsideration must be overruled.